**YIM LAW GROUP LLC**
122 West 27th Street, Floor 10
New York, New York 10001
T: (212)561-5522 – F: (212)561-5286
www.yimlawgroup.com


April 14, 2009

*Michael D. Yim - Michael@yimlawgroup.com*
BY ECF AND HAND DELIVERY
The Honorable Judge William D. Wall
Long Island Courthouse
1044 Federal Plaza, P.O. Box 9014
Central Islip, NY 11722-9014

      Re:  <u>Thong v. Majoongmool Corp.</u>, 08 Civ. 3469


  I, Michael Yim, counsel for Defendants Susan Lee, Majoongmool Corp. and Diva Nails, Inc. ("Defendants"), submits in my own capacity this pre-hearing statement in opposition to Plaintiffs' motion for sanctions and contempt[1]. Plaintiffs and their counsel have brought their application against me in bad faith as part and parcel of their deliberate strategy to abuse and harass Defendants and to frustrate their ability to obtain a fair and judicious resolution of the underlying disputes. As such, I respectfully request that this Court upon the hearing of evidence (1) deny Plaintiffs' application for sanctions and contempt against me; and (2) award me fees, costs and other relief this Court finds just and necessary in opposing the motion.

  Irrespective of whatever determinations this Court may find against or in favor of Defendants, I should not be discouraged from performing my duties as an attorney and as a zealous advocate for my clients. Plaintiffs' attacks and allegations against me are calculated to unfairly establish prejudice against me, as counsel, and to distract me from performing my duties. As demonstrated below, I have acted in good faith and well within the boundaries of the law. And, it is Plaintiffs and their counsel who have acted unethically during deposition and in bad faith in bringing this motion.

**<u>Plaintiffs' Motion for Sanctions Against Attorney is Procedurally Defective</u>**

  Plaintiffs have not complied with procedural requirements of the Local Rules and Your Honor's chamber rules in bringing this discovery motion for contempt and sanctions against me. Local Rule 37.3(c) requires motions concerning discovery disputes either by telephone conference with <u>all affected parties</u> on the line or by letter not exceeding three pages in length

---

[1] The length of this letter is necessary due to Plaintiffs' failure to follow proper procedures in pursuing a discovery motion. The motions that were raised against me, personally, at the hearings were vague and only related to the general manner of the deposition. As such, it is necessary to provide comprehensive details to prevent any potential misrepresentations that may be made by Plaintiffs concerning my conduct as an attorney and to preserve a full record of my objections in opposition to Plaintiffs' motion.

outlining the nature of the dispute and attaching relevant materials (emphasis added). Moreover under both the Local Rule 37.3(a) and Your Honor's chamber rules 3(A)(1), "Parties must make a good faith effort to resolve disputes, including in-person contact either by telephone or in person, **before** making a motion." It respectfully submitted that Plaintiffs did neither.

Instead, Plaintiffs made their motion for sanctions against me during the prior hearings before the Court in which I was not present. As Plaintiffs made allegations against me, individually, they should have either made the motion via telephone with me on the line, contacted me to be present at the hearing (in addition to my co-counsel) to make the motion, or sent a letter detailing the nature of the dispute. I was only made aware of the charges against me by my co-counsel and the transcript of the hearing before Your Honor, dated April 6, 2009 ("April 6 Transcript"). Exhibit A, at 12:19-20. Indeed, Plaintiffs have never sent any notice to me of the instant motion or copies of the transcripts to indicate a motion against me. Moreover, Plaintiffs have made no good faith efforts to resolve any of the underlying discovery dispute concerning a limited deposition of Defendant Susan Lee. Plaintiffs have not contacted me since the deposition nor requested a continuation of the deposition. As such, this Court should find Plaintiffs' application improper before the Court due to Plaintiffs' violations of the applicable rules of procedure.

**Background of the Proceedings**

On March 9, 2009, Plaintiffs attempted to file the instant Order to Show Cause for injunctive relief pursuant to Rules 65 of the Federal Rules of Civil Procedure and New York State Law. As relief, Plaintiffs requested the freezing of Defendants' assets and forfeiture of Susan Lee's passport to the Court. Plaintiffs also sought leave from the Court to pursue accelerated discovery. Plaintiffs represented that they "wish to conduct limited expedited discovery at this time on the sole subject of the secretion of funds, and not on the merits of the case itself." Plaintiffs' Memorandum of Law in support of their applications for injunctive relief, dated March 9, 2009 ("Plaintiffs' Memo"), at 14.

On March 12, 2009, Defendants submitted papers in opposition to the Order to Show Cause. Defendants argue that injunctive relief under Rule 65 is inappropriate because the Court lacks the authority to freeze a defendant's assets, so as to preserve the defendant's funds for a future judgment. See Grupo Mexicano De Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 330 (1999). Similarly, a preliminary injunction is unavailable under New York State law to protect an expected money judgment. See Indosuez v. Rossiyskiy Kredit Bank, 94 N.Y.2d 541(2000). Defendants further argued in opposition that Plaintiffs cannot seek an order for attachment because depletion of assets to make payment to preferred creditors with the intent of excluding a plaintiff is "not the type [of activity] that CPLR § 6201(4) is designed to safeguard against." Trigo Hnos., Ins. V. Premium Wholesale Groceries, Inc., 424 F.Supp. 1118 (S.D.N.Y. 1976); see also Nanjing Textiles Imp/Exp Corp., LTD. V. NCC Sports Wear Corp., 2006 U.S. Dist. LEXIS 56111, at *18 (S.D.N.Y. 2006) (stating as a matter of law that "[f]raudulent intent cannot be inferred from the mere fact that [defendant] has liquidated or disposed of its business assets"). It is respectfully submitted that the underlying sales were consummated for a proper purpose.

On March 12, the Court held a hearing on Plaintiffs' application for injunctive relief and expedited discovery. The Court, at that time, declined to issue a TRO to freeze Defendants' assets but nevertheless, authorized a limited deposition of defendant Susan Lee and granted leave to Plaintiffs to issue discovery demands for facts related to certain sales of assets and allegations made in applications for an order for attachments.[2]

**Plaintiffs Conducted Depositions in an Unfair Manner**

Plaintiffs' conduct during the deposition of Susan Lee was so unfair and in bad faith that it was necessary and proper to terminate the deposition to prevent further harassment, embarrassment, and oppression. Plaintiffs allege that I should be sanctioned and held in contempt because "[Defendants] stopped it prematurely. They, in fact stopped the deposition three times and threatening to walk out." Exhibit A, at 7:4-5. Plaintiffs misrepresented the nature of the deposition proceedings and committed serious ethical violations during the course of the deposition. Moreover, Plaintiffs repeatedly attempted (1) to circumvent the Court ordered limitation on the subject matter of the deposition, (2) to refuse to honor stipulations resolving discovery disputes; (3) to willfully engage in conduct aimed at humiliating defendant Susan Lee; and (4) to engage in conduct to inhibit me from performing my duties as counsel. The transcript reflects that Plaintiff Thong and an attorney for Plaintiffs giggled out loud at Defendant to mock her during her deposition. Exhibit B, Deposition of Susan Lee, dated March 20, 2009 ("Lee Dep."), at 96:7-9.

Rule 30(d)(2) only permits sanctions for the "fair examination of the deponent." For the reasons below, this Court should deny sanctions and contempt because the deposition fails to satisfy the fairness standard of Rule 30.

**Depositions without the Presence of Deponent's Attorney and Bad Faith Tactics**

Counsel for Plaintiffs' unethical tactics during deposition are demonstrated by his questioning of Ms. Lee without the presence of her counsel. Exhibit B, Lee Dep., at 108:17-110:15. Ethical Canon 9 of the New York Code requires all attorneys to avoid the appearance of impropriety. New York Disciplinary Rule 7-104(a)(1) states that:

---

[2] While I was preparing this letter, Plaintiffs' counsel filed a response to Diane H. Lee's letter to Your Honor, dated April 9, 2009. On page 2 of this letter, dated April 14, 2009, Plaintiffs represented that:

> The Court ordered the Defendant to respond to Plaintiffs' Interrogatories and Document Requests by Monday, March 16, 2009. [Transcript at 41]. Defendants responded at 1:51 pm, Tuesday, March 17, 2009, providing new information in only one interrogatory response (stating that Defendant Guining Cui is married to an individual named Kwan Hee Oh) and by producing only three documents (old monthly bank statements).

Plaintiffs' statement is patently false and is contradicted by Plaintiffs' previous submissions to the Court. On March 16, 2009, Plaintiffs filed a letter to the Court complaining of Defendants' responses to the discovery demands. Docket #27. Annexed as Exhibit D to the letter was a copy of Defendants' responses to the discovery demands. As the entry demonstrates, the responses were served timely on Defendants. The only documents submitted to Plaintiffs on March 17, 2009 were Defendants' motion for a protective order which is still pending and my notice of appearance. Docket # 28-29. To the extent that Plaintiffs seek sanctions against me on this matter, I request an additional opportunity to fully respond to Plaintiffs' April 16 letter.

3

> [d]uring the course of the representation of a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer.

Counsel for Plaintiffs violated this provision on two occasions – by first proceeding in deposition while I was out to use the bathroom and second by inducing further statements on the record after the client insisted on the presence of a lawyer during her deposition. Exhibit B, Lee Dep., at 108:17-110:15. Counsel for Plaintiffs could not have, in any way, reasonably believed that depositions without the presence of counsel would be ethically permissible. Indeed, two other attorneys for Plaintiffs were present. None of whom made any attempt to restrain the depositions in the absence of counsel.

The record reflects that Plaintiffs' counsel asked "we'll continue then, if you don't mind" and that there was no response on the record to that statement. Exhibit B, Lee Dep., at 108:23-109:6. Further, the deponent on the record affirmatively questioned Plaintiffs' counsel's representation that I consented to allow unrepresented testimony. Id., at 109:16-19 (A: "He said just to continue?"). At that point, Plaintiffs' counsel should have stopped imposing questions and suspended the records. Instead, he persisted to represent that I authorized further questions. My client, however, again refused to proceed without my presence. Thereafter, my client made a general statement which was recorded on the record. After she concluded her statement, Plaintiffs' counsel induced my client to make further statements on the record. Id., at 110:8.

Moreover, Counsel for Plaintiffs violated New York Disciplinary Rule 7-110(B) during deposition by engaging in an *ex parte* communication with the Court to request a hearing during deposition. Exhibit B, Lee Dep., at 99:2-117:4  At 1:51 p.m., the three attorneys for Plaintiffs requested a conference. At approximately 2:06 p.m., only two of the three attorneys returned for deposition. I observed that the third attorney, Natasha Korgaonkar (who at the time was not admitted to practice in any court), left the deposition room. At approximately 2:35 p.m., Ms. Korgaonkar returned and Counsel for Plaintiff requested a recess.[3] Thereafter, they advised me

---

[3] During this thirty minute window, Counsel for Plaintiffs proceeded to ask Ms. Lee if she was aware of Plaintiffs' then pending application for a TRO. Counsel for Plaintiffs misrepresented Ms. Lee's testimony to Judge Platt by stating "Her attorney said to her, Diane Lee, said to her that you have ruled on her TRO and it was okay for her to sell the salon and she did so." Exhibit C, Hearing before Judge Platt, dated March 20, 2009 ("March 20 Hearing"), at 5:15-18. The deposition transcript contradicts Plaintiffs' representation and reads as follows:

> MR. HAN:
> **Q. Were you aware that Diane Lee or Mr. Yim appeared before Judge Platt in the Eastern District of New York last Monday and last Thursday because the Plaintiffs had filed a motion to stop you from selling the Diva Nails Salon?**
> A. Yes, but I was told that, you know, just, you know, I cannot travel, but I was told it was okay.
> **Q. Who told you that it was okay to sell the Diva Nails Salon?**
> A. I wasn't told that it was okay to sell the salon. You know, I wasn't told that, but there was this motion, and I was told that the Judge did not accept that motion.
> **Q. Did you know that the motion is still pending?**
> A. No, I don't know whether it was, the decision was made or not, but I was just told for us it really didn't go through.

4

off the record that deposition will be suspended to attend a hearing before Judge Platt concerning facts arising out of the deposition. It is apparent that Ms. Korgaonkar, an unlicensed attorney, made a motion for a hearing via an *ex parte* communication with the Court. Counsel for Plaintiffs never informed me that they would be seeking a hearing, and instead, engaged in an *ex parte* communication with the Court to obtain an unfair advantage.

**Plaintiffs' Refusal to Conduct the Deposition Within the Scope of This Court's Order**

The first stoppages of the deposition were necessary to obtain Plaintiffs' compliance with the Court ordered limitation on deposition and each time resulted in good faith resolutions without need for judicial intervention. Early in the deposition, Plaintiffs did not intend on pursuing a deposition within the scope of the Court ordered limitation for the deposition. In response, I noted on the record that

> the Court ordered the deposition concerning limited facts regarding certain sales of assets and allegations made in applications for an order for attachments. I'm raising objections to the extent that they're going beyond the scope of the Order and you're asking questions concerning detailed matter that should be deemed annoying, harassing and whatever.

Exhibit B, Lee Dep., at 16:4-14.

Despite this warning, counsel for Plaintiffs persisted on eliciting improper questions. Exhibit B, Lee Dep., at 18-31:14; see SEC v. Oakford Corp., 141 F.Supp.2d 435 (S.D.N.Y. 2001) (holding that a deponent cannot be compelled to testify to matters outside of a Court ordered subject limitation for depositions). I once again objected and demanded that Plaintiffs refrain from further violations. Exhibit B, Lee Dep., at 20:6-23:17. Counsel for Plaintiffs then refused my request. I then requested an opportunity to call your Honor to resolve this discovery dispute and to seek a protective order enforcing the limitation on scope. Plaintiffs' counsel harassed me while I searched for Your Honor's number and threatened to continue questioning. Id., at 20:6-23:17. I also requested Your Honor's telephone number from Plaintiffs' counsel, but they refused to respond. Id., at 20:19-22. After my clear intent to contact Your Honor, the parties resolved the matter in good faith and agreed to reserve specific questions and motion for a later time. Id., at 23:11-17

Counsel for Plaintiffs then again entered into a series of questions that exceeded the scope of the deposition. Exhibit B, Lee Dep., at 25:18-28:14. In an attempt to resolve this matter in good faith, I requested that counsel for Plaintiffs to explain how these lines of questions were within the scope of the Court's order. Id., at 28:12-29:21. Counsel for Plaintiffs refused to explain his position and to further resolve this matter in good faith. Id., at 28:12-29:21. At that point, I was left with no choice but to stop the deposition to seek a protective order and

---

Exhibit B, Lee Dep., at 104:14-105:9.
One reason for Plaintiffs' decision to make an *ex parte* communication was to enable a fishing expedition. As demonstrated above, they did not obtain the information that they so desired but willfully chose to misrepresent the testimony otherwise to support their application for a TRO and harass counsel for Defendants.

resolution of the discovery dispute through judicial intervention. Id., at 28:12-29:21. In light of an impending motion, Counsel for Plaintiffs reached out to me for an off the record discussion to resolve this dispute. As a result, the parties agreed to enter into a stipulation:

> to delay three topics of the deposition for the time being. The first one is issues relating to the Defendant's personal life; the second one is issues relating to the Defendant's personal relationships; the third one is evidence of, well, general issues, but predating 2007.

Id., at 30:24-31:14.

Now, Plaintiffs are now attempting to conceal good faith efforts made by me to resolve discovery disputes. Indeed, the matters reflect good faith resolutions of discovery disputes. As such, Plaintiffs' allegations that the above referenced stoppages of the depositions were made in bad faith are misleading and disingenuous.

**Plaintiffs' Harassment of Defendant During the Deposition**

As I feared earlier in the deposition, Plaintiffs' previous attempts to ask questions outside of the scope of the Court's limitation were for the sole purpose of harassment, embarrassment and oppression of the deponent. Exhibit B, Lee Dep., at 141:24-157:25. It is respectfully submitted that (1) the questions that were previously reserved by agreement and later asked during the deposition were so outrageous and unfair that my decision to terminate the deposition was justified and proper; and (2) the deposition within the scope of the Court ordered limitation was, in effect, completed.

Questions about Defendants' Handicapped Child

Counsel for Plaintiffs continually pressed the deponent on the physical condition of her disabled child who has no use of his right arm and leg. Exhibit B, Lee Dep., at 149:17-152:17. Despite clear emotional outburst and weeping, counsel for Plaintiffs then pressed in an inappropriate line of questioning as to whether her disabled child was able to procure employment and whether she, as a mother, supported him. Id., at 149:17-152:17. In particular, I specifically refer the Court to the following excerpts:

> MR. HAN: Q. Does either one of your children have a physical disability?
> A. Yes, my older one.
> Q. What is the physical disability?
> A. How can I explain? He is unable to use his arms and legs well, and I really do not want to talk about it, but, you know, when I gave birth, he was, there was short of oxygen, and I don't know what it's called here, but he doesn't have the full use of his right arm and right leg.
> Q. I see. That's sad. I'm sorry about that.

6

> A. That's why I really wanted to solve this, whatever they wanted, because I also want to do my business because I have to achieve this American dream for my son.
> Q. So do you have to support your 24-year-old?
> A. I didn't want him to be picked on in China or Korea because he was disabled.
> …
> MR. HAN: Q. Is he able to work, or does his disability prevent him from working?
> A. No, he is unable to work.
> Q. Do you support him?
> A. He looked for work, but, because he wanted to help me, and so he went to the vegetable stand and he wanted to work there. He went to supermarkets and asked if they would like to hire him. I'm just, I feel so sorry for my son, just for him. I have to be a good citizen and I have to work hard.
> …
> Q. Has any doctor ever diagnosed your child with a medical problem?
> A. In China.
> Q. You stated earlier that your son, your 24-year-old son is not able to work because of his medical condition; is that true?
> A. Because nobody is hiring him. This is a sad story.
> Q. And so do you have to support him financially because no one will hire him?
> A. Yes.

Id., at 149:17-152:17.

Questions about Defendant's Divorce

Counsel for Plaintiffs then proceeded to ask questions concerning the father of deponent's children and ex-husband, John Lee. I observed Ms. Lee to still be emotionally upset and crying. Despite this, Counsel for Plaintiff continued to press further personal questions that were aimed to further humiliate Ms. Lee. I specifically refer the Court to the following excerpt, which were the final sets of questions which prompted me to terminate the deposition:

> MR. HAN: Q. You testified earlier that you and John Lee got a divorce; is that correct?
> A. Yes.
> Q. What year was that?
> A. No, I really don't want to talk about what year.
> Q. Are you refusing to answer the question?
> A. Because I don't think this is something important because this is something that hurts me a lot.
> Q. Are you refusing to answer?

7

>A. I'm not refusing to answer because I don't want to solve this problem. It's just that it hurts me to talk about it.
>Q. I'm going to note that you're refusing to answer. If you're not, then you should answer the question.
>A. What was the question?
>Q. When did you and John Lee get a divorce?
>A. I don't remember the exact date.
>Q. What year?
>A. It was long time ago, so I can't really pinpoint the year.
>Q. Where did you live when you got divorced?
>MR. YIM: I'm ending the deposition.
>MR. HAN: What's the problem?
>MR. YIM: This has nothing --
>THE WITNESS: It's embarrassing for me to divulge my personal information.

Exhibit B, Lee Dep., 154:8-159:2.
The record indicates that the deposition concluded at 5:07 p.m., seven (7) hours and twelve (12) minutes after the commencement of the deposition. The record further reflects my objection to the deposition on grounds that Plaintiffs' conducted the deposition to annoy, harass and humiliate Ms. Lee.

Plaintiffs' Violation of Stipulation for a Protective Order Concerning Sensitive Information

During the questioning on Ms. Lee's family, Plaintiffs' counsel also twice attempted to circumvent a stipulation for a protective order prohibiting the disclosure of "Social Security numbers, tax ID numbers, visas, applications for public benefits, any indicia of immigration status contained on an I-9 or W-4 or any other indicia of immigration status." The stipulation, to be signed and ordered by the Court, was prompted by Defendants' application for a protective order, filed March 17, 2009. Defendants cited to Rengifo v. Eravos Ent., 2007 WL 894376 (S.D.N.Y. 2007) as the legal basis for said protective order. There, the defendant attempted to obtain the plaintiffs' tax returns to determine the amount of wages that the plaintiff received and to test his credibility. The Court granted plaintiffs' application order preventing the disclosure of such information because production of such information would create "the danger of intimidation, the danger of destroying the cause of action' and would inhibit plaintiffs in pursuing their rights." See id., at * (citations omitted).

The attorneys for the parties agreed to the stipulation the night before the deposition, March 19, 2009. In exchange for my consent, I agreed to extend the stipulation to apply to Plaintiffs' information. Counsel for plaintiffs represented to me that the stipulation would be filed with the Court for Your Honor's signature and order the next day. Despite this stipulation, Counsel for Plaintiffs then attempted to ask questions in deposition concerning Ms. Lee's tax information. Exhibit B, Lee Dep., at 140:20-140:22; 142:20-147:10. Plaintiffs' counsel specifically asked "[w]ho is your personal accountant who handles your personal information?" I instructed the Defendant not to answer and demanded that Plaintiffs' counsel honor the stipulation and demanded a copy of the stipulation. Id., at ., at 140:20-140:22; 142:20-147:10. Counsel for Plaintiffs then directed his colleague to refuse to present a copy of the stipulation to me. Id., at 144:11-14 ("MR. HAN: Wait,

don't give it to him.") Upon viewing the stipulation from across the table, I did not see Your Honor's execution of the Order. To date, I have not be served with or provided a copy of a signed Order. The docket does not reflect the filing of the stipulation.

Plaintiffs did not file the stipulation to enable themselves to seek improper information through the deposition, to open opportunities to accumulate prejudicial information to intimidate Ms. Lee and to avoid the Court's awareness of the matter. Since then, Plaintiffs have subpoenaed Ms. Lee's personal account and obtained the exact information covered by the stipulation. I have confirmed with my receptionist that Plaintiffs have not serviced me with a copy of the subpoenas to Ms. Lee's accountants to my office despite my filing of the Notice of Appearance demanding service of all notices. Since the stipulation for the protective order has not been filed and Plaintiffs have refused to honor its terms, Defendants' application for a protective order is still pending.

Counsel for Plaintiffs threatened to ask inappropriate questions relating to the Ms. Lee's personal life for the rest of the deposition. Exhibit B, Lee Dep., at158:19-25 ("MR. HAN: I'm going to ask about her entire family). The record reflects that Counsel for Plaintiffs concluded his questioning on subjects related to assets and would be not be asking any further questions beyond Ms. Lee's family. I had no confidence or reason to believe, at that point, that Counsel for Plaintiffs would cease to exploit Ms. Lee's sensitive information and conduct the rest of the deposition in a fair manner. I further had no confidence that Plaintiffs would honor any directives through judicial intervention due to their misrepresentations, attempts to skirt ethics rules, this Court's order and stipulations between parties. As such, it is respectfully submitted that I was left an extreme but necessary and proper choice to terminate an unfair deposition.

**Conclusion**

It is respectfully submitted that Plaintiffs' application for sanctions and contempt against me, personally, should be denied because (a) it is procedurally improper; (b) I have always acted in good faith; and (c) the depositions failed to meet the fairness standard pursuant to Rule 30(d)(2).

> Very truly yours,
> YIM LAW GROUP LLC
>
> /s/
> Michael D. Yim [MY-5335]

Cc: John Han, Esq (via ECF)
David Colodny, Esq. (via ECF)
Diane H. Lee, Esq. (via ECF)